

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| ROBERT EDWIN JACOBSEN, | § | Case No. 07-41092 |
| | § | (Chapter 13) |
| Debtor. | § | |

**MEMORANDUM OPINION AND ORDER GRANTING CHAPTER 13 TRUSTEE'S MOTION TO CONVERT CASE TO CHAPTER 7 AND DENYING DEBTOR'S MOTION TO VOLUNTARILY DISMISS CHAPTER 13 CASE**

This matter is before the Court on the Chapter 13 Trustee's Motion to Convert Case to Chapter 7 ("Motion to Convert") [Docket No. 33] filed by the Standing Chapter 13 Trustee ("Chapter 13 Trustee") on August 2, 2007, and the Debtor's Motion to Dismiss ("Motion to Dismiss") [Docket No. 34] filed by Robert Edwin Jacobsen ("Debtor") on August 2, 2007. The Court commenced a hearing on the motions on September 27, 2007, which was continued to November 21, 2007 in order to allow the parties to present additional arguments and evidence. At the conclusion of the hearing on November 21, 2007, the Court orally granted the Motion to Convert filed by the Chapter 13 Trustee for the reasons stated on the record and set forth more fully in this Memorandum Opinion.[1]

**BACKGROUND**

The Debtor is a licensed real estate broker in the state of California. His wife, Alise Malikyar, currently works as a hair stylist in California. The Debtor testified that his wife occasionally buys, improves, and sells homes. The Debtor and his wife do or have done business in the names of various corporations and partnerships, including REJ Properties,

---

[1] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. Likewise, to the extent that any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court expressly reserves the right to make additional findings as necessary or as requested by any party.

Inc., Humbolt Equities, II (which owns an unimproved lot in the Sierra Nevada Mountains), Rodalsen Partnership (which invests in land development projects in Central America) and British American Yacht Corporation (a yacht charter business).

The Debtor and his wife married in 1999, and most of the assets subsequently acquired by the Debtor and his wife were placed into the name of the Debtor's wife. These assets included their homes in California, as discussed below, real property located in the State of Texas as well as five lots located in Lake Tahoe, California. The Debtor managed the investment properties, and his wife received monthly rental income from some of the properties. Some of the property titled in Ms. Malikyar's name was used to pay the Debtor's personal obligations.

The Debtor testified that his wife, who is from Afghanistan, does not speak English very well. The Debtor and his wife purport to have entered into pre-nuptial and post-nuptial marital agreements regarding the division of property acquired during their marriage. No such agreement, however, was ever recorded in the applicable real property records.

During their marriage, the Debtor and his wife acquired and resided in a home located at 2324 Tice Valley Boulevard in Walnut Creek, California (the "Tice Valley Property"). The home was titled in the name of the Debtor's wife. Additionally, from December 2005 through June 2006, the Debtor and his wife lived on a yacht in the Caribbean. The Debtor acquired the yacht by borrowing $990,000 from Osprey Investments, which subsequently assigned the note to the Rodelson Partnership. After spending some time enjoying themselves in the Caribbean and attempting to start a charter business, the Debtor and his wife brought the boat to Florida and sold it in a complicated series of transactions involving real property acquired during their marriage and several of their businesses.

The Debtor testified that, for several years prior to bankruptcy, he lived in the Eastern District of Texas. In the weeks prior to bankruptcy, a home in California, which was referred to by the parties as the "Bella Vista Property," was acquired and titled in the name of the Debtor's wife. The purchase price of the Bella Vista Property was approximately $1.2 million. The Debtor moved from Texas to California in April or May 2007 and, at the time of the hearing, was residing at the Bella Vista Property with his wife.

One month after filing a petition for relief under Chapter 13 of the Bankruptcy Code, and after receiving an extension of time from the Court, the Debtor filed his bankruptcy schedules. The Debtor lists three residential real properties in his "Schedule A – Real Property," and he claims an exempt interest in two of these properties in his "Schedule C – Property Claimed as Exempt." The properties in which the Debtor claims an exempt interest are located at 15162 Snowshill Drive in Frisco, Texas (the "Snowshill Property") and 2304 Sky Harbor Drive in Plano, Texas (the "Sky Harbor Property").

The Debtor's "Schedule D – Creditor's Holding Secured Claims" includes Timothy E. Carlson, CPA, as a non-disputed, liquidated secured creditor with a claim in the amount of $47,530.00. On December 19, 1994, the Municipal Court of California, County of Contra Costa, Walnut Creek/Danville Judicial District, presently known as the Superior Court of California, County of Contra Costa, entered its Stipulated Judgment, awarding, *inter alia*, a monetary judgment in the principle amount of $17,881.46 ("Judgment") in favor of Mr. Carlson and against the Debtor. The Judgment was subsequently renewed, and abstracts of the original Judgment and the renewed Judgment were filed in the official public records of Contra Costa County, California.

The Debtor's "Schedule F – Creditors Holding Unsecured Nonpriority Claims" includes John and Bernadette Sramek as holding a contingent, unliquidated, disputed claim in the amount of $1,627,536.38. Prior to bankruptcy, John S. Sramek and Bernadette D. Sramek, individually and as Trustees of the John S. Sramek, Jr. and Bernadette D. Sramek Revocable Living Trust (collectively, the "Srameks"), filed a lawsuit against the Debtor, among others. The litigation is styled *John S. Sramek, et al. v Robert E. Jacobsen, et al.*, and is pending in the Superior Court of Contra Costa County, California (the "California Lawsuit"). In the California Lawsuit, the Srameks assert, among other claims, that Debtor defrauded them in a real estate transaction.

On June 20, 2007, the Standing Chapter 13 Trustee conducted a meeting of creditors pursuant to 11 U.S.C. §341(a). At that meeting, the Debtor disclosed the existence of numerous real properties titled in his wife's name and informed the Chapter 13 Trustee that the Tice Valley Property was proceeding to sale. The Chapter 13 Trustee subsequently filed an adversary proceeding against the Debtor and his wife, seeking, *inter alia*, to enjoin the sale of the Tice Valley Property. The Court granted the Standing Chapter 13 Trustee's request for a restraining order following a hearing on August 3, 2007. At that hearing, the Debtor disclosed, for the first time, that he had a non-exempt equity interest in the Tice Valley Property.

Neither the Debtor's bankruptcy schedules nor his statement of financial affairs disclose any marital property agreement with Ms. Malikyar. The Debtor's bankruptcy schedules do not include any of the property managed by the Debtor for his wife, any of the real property acquired during their marriage and titled in the Debtor's wife name, or all of the

4

Debtor's pre-petition bank accounts. The Debtor's bankruptcy schedules also do not disclose any of his wife's pre-petition income or all of their business interests.

The Chapter 13 Trustee filed her Motion to Convert on August 2, 2007. The Debtor responded by filing his Motion to Dismiss in which he purports to exercise his "absolute" right to dismissal under 11 U.S.C. §1307(b). The Chapter 13 Trustee opposes the Debtor's Motion to Dismiss, asserting, among other things, that "there appear to be substantial undisclosed non-exempt assets."

## DISCUSSION

### The Parties' Arguments

Section 1307(b) of the Bankruptcy Code provides that "[o]n request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter." The next subsection provides that:

> [O]n request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause....

11 U.S.C. §1307(c). Here, in connection with his Motion to Dismiss, the Debtor argues that §1307(b) confers upon him an absolute right to withdraw his Chapter 13 petition prior to the adjudication of the Motion to Convert. The Chapter 13 Trustee argues, in opposition, that subsection (c) limits the Debtor's ability to voluntarily withdraw his petition under the previous subsection.

### Interpreting 11 U.S.C. §1307

Courts disagree as to the interplay between §1307(b) and §1307(c). This Court has previously held that §1307(c) curtails a Chapter 13 debtor's right to voluntary dismissal where evidence of the Debtor's improper conduct or fraud exists. *In re Crowell*, 292 B.R.

541, 543 (Bankr. E.D. Tex. 2002). *See also, e.g., In re Molitor,* 76 F.3d 218, 220 (8th Cir. 1996); *In re Graven,* 936 F.2d 378, 385 (8th Cir. 1991); *In re Harper-Elder,* 184 B.R. 403, 404-05 (Bankr. D. D.C. 1995); *In re Howard,* 179 B.R. 7, 9-10 (Bankr. D. N.H. 1995); *In re Gaudet,* 132 B.R. 670, 675-76 (D. R.I. 1991). Other courts, however, have reasoned that subsection (b) trumps subsection (c), even where cause exists to convert the case under subsection (c). *See, e.g., In re Barbieri*, 199 F.3d 616 (2nd Cir. 1999); *Beatty v. Traub (In re Beatty),* 162 B.R. 853, 857 (9th Cir. BAP 1994); *In re Whitmore,* 225 B.R. 199, 202 (Bankr. D. Idaho 1998); *In re Patton,* 209 B.R. 98 (Bankr. E.D. Tenn. 1997); *In re Greenberg,* 200 B.R. 763 (Bankr. S.D. N.Y. 1996), *In re Harper-Elder,* 184 B.R. 403 (Bankr. D.C. 1995), *In re Sanders,* 100 B.R. 338 (Bankr. S.D. Ohio 1989); and *Matter of Hearn*, 18 B.R. 605 (Bankr. D. Neb. 1982).

"[I]n all cases involving statutory construction, our starting point must be the language employed by Congress and we assume that the legislative purpose is expressed by the ordinary meaning of the words used." *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68 (1982) (citations and internal quotations omitted). Courts are to "'presume that a legislature says in a statute what it means and means in a statute what it says.'" *Matter of Pro-Snax Distributors, Inc., Andrews & Kurth, L.L.P. v. Family Snacks,* 157 F.3d 414, 425 (5th Cir. 1998) (quoting *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 254 (1992)). A statute should be construed so that none of its terms are redundant and should be read to avoid internal inconsistency. *See, e.g., Crist v. Crist (In re Crist),* 632 F.2d 1226, 1233 n. 11 (5th Cir. 1980) (stating that courts should give effect, whenever possible, "to all parts of a statute and avoid an interpretation which makes a part redundant or superfluous."). For statutory language to be considered ambiguous, "it must be 'susceptible to more than one

reasonable interpretation' or 'more than one accepted meaning.'" *Carrieri v. Jobs.com, Inc.,* 393 F.3d 508, 510 (5th Cir. 2004) (quoting *United States v. Kay,* 359 F.3d 738, 743 (5th Cir. 2004)).

The statutory language of §1307(c), on its face, supports a conclusion that a debtor's ability to dismiss a case under subsection (b) does not preclude a conversion of the case under subsection (c). Section 1307(c) of the Bankruptcy Code, by its terms, operates independently of a request for dismissal under subsection (b). Section 1307(c) provides that a motion to dismiss under that section may be granted "except as provided in subsection (e) of this section." Nothing in the language of subsection (c) requires the Court to deny a motion to convert simply because the Debtor has filed a competing motion to dismiss his case under subsection (b). It appears that, in order for subsection (b) to "trump" subsection (c) as a matter of statutory interpretation, the Court would be required to alter the statutory language of subsection (c) to read "except as provided in subsections (b) and (e) of this section." This Court declines to do so.

The Court's statutory construction also gives effect to legislative intent. The purpose of §1307(a) – (b) of the Bankruptcy Code is to ensure that the long-term repayment of debt through wages in a Chapter 13 proceeding is voluntary. *See* H.R.Rep. No. 595, 95th Cong., 1st Sess., at 120 (1977) (discussing the need for voluntariness in the context of the prohibition against involuntary servitude found in the thirteenth amendment and other policy considerations). A statutory shield against involuntary servitude, however, is not a shield against the conversion of a case from Chapter 13 to Chapter 7. In contrast to the provisions in Chapter 13 compelling debtors to pay a portion of their future wages to creditors, debtors in Chapter 7 cases are not required to pay any future wages to creditors – rather, in a chapter

7

7 case, non-exempt and unencumbered assets are liquidated and the proceeds distributed to creditors. Thus, the conversion of this case to a liquidation proceeding under Chapter 7 of the Bankruptcy Code does not violate the prohibition of involuntary servitude, and the Court need not limit the application of subsection (c) out of the Bankruptcy Code in order to effectuate the purpose of § 307(a) – (b).

### The Court's Authority under 11 U.S.C. §105(a)

Moreover, §105(a) of the Bankruptcy Code specifically "authorizes a bankruptcy court to fashion such orders as are necessary to further the purposes of the substantive provisions of the Bankruptcy Code," *United States v. Sutton*, 786 F.2d 1305, 1307 (5th Cir. 1986). It is interpreted liberally, *Matter of Zale Corp.*, 62 F.3d 746, 760 (5th Cir. 1995), and while that certainly "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity," *Sutton*, 786 F.2d at 1308, neither can an approach be justified which effectively writes §105(a) out of the Bankruptcy Code. Section 105(a) "authorizes bankruptcy courts to fashion such orders as are necessary to further the substantive provisions of the Code," *In re Southmark Corp.,* 49 F.3d 1111, 1116 (5th Cir.1995) (citations and internal quotations omitted), including, as recently discussed by the Supreme Court, any action that is necessary or appropriate to prevent an abuse of process and sanction abusive litigation practices. *Marrama v. Citizens Bank of Massachusetts, et al.,* -- U.S. --, 127 S.Ct. 1105, 1112 (2007).

The equities in this case support the Court's interpretation of §1307. Congress gave "honest but unfortunate debtor[s]," *Grogan v. Garner*, 498 U.S. 279, 287 (1991), "the chance to repay their debts should they acquire the means to do so," *Marrama,* 127 S.Ct. at 1111. In this case, however, the Debtor has been far from honest and forthright. Prior to bankruptcy,

8

marital property was titled in his wife's name, but the Debtor managed the property, the property was used to pay the Debtor's sole obligations, and the Debtor lived on the Tice Valley Property. The Debtor failed to disclose any of the pre-bankruptcy transactions involving his wife, who is an insider within the meaning of §101(31)(A) of the Bankruptcy Code, in his bankruptcy schedules, thereby hampering the ability of the Chapter 13 Trustee to investigate the Debtor's schedules and administer the bankruptcy estate. The Debtor filed his Motion to Dismiss only after he was electronically served with the Chapter 13 Trustee's Motion to Convert. "[T]o allow [the Debtor] to respond to a motion to convert by voluntarily dismissing his case with impunity would render section 1307(c) a dead letter and open up the bankruptcy courts to a myriad of potential abuses." *See Molitar*, 76 F.3d at 320.

### The Chapter 13 Trustee's Motion to Convert

Finally, turning to the merits of the Chapter 13 Trustee's Motion to Convert, it appears from the record that the Debtor has deliberately failed to disclose substantial assets. The bankruptcy schedules filed with the Debtor's petition did not disclose Ms. Malikyar's alleged interests in property, as previously discussed, and the Debtor has not filed any amended schedules to fully disclose his or Ms. Malikyar's alleged interests in property. The record contains ample evidence of the Debtor's bad faith, including his failure to schedule assets and his attempts to frustrate his creditors. The Court concludes that, under the circumstances, cause exists to convert or dismiss the Debtor's case under §1307(c) of the Bankruptcy Code and that conversion, rather than dismissal, is in the best interest of the Debtor's creditors and the Debtor's bankruptcy estate.

### CONCLUSION AND ORDERS

For the foregoing reasons,

**IT IS ORDERED** that the Chapter 13 Trustee's Motion to Convert [Docket No. 33] is **GRANTED** and that the Debtor's Chapter 13 bankruptcy case is hereby converted to a case under Chapter 7 effective as of November 21, 2007.

**IT IS FURTHER ORDERED** that the Debtor's Motion to Dismiss [Docket No. 34] is hereby **DENIED.**

Signed on 12/5/2007

*Brenda T. Rhoades*   SR
HONORABLE BRENDA T. RHOADES,
UNITED STATES BANKRUPTCY JUDGE